Judge Crenshaw
delivered the opinion of the Court.
Edward M. Blackburn, having recovered a judgment against Vardeman Collins in the Franklin Circuit Court, for the sum of $1000, besides interest and costs, caused an execution to issue thereon, which was levied on two slaves, Ned and Stephen, and was stayed by Blackburn, 17th January, 1842.
On the said 17th of January, 1842, a venditioni expo-nas was issued, and on the 14th day of February thereafter, said slaves were exposed to sale by the Sheriff, and George E. Blackburn, a son of said Edward, became the purchaser at the sum of $800. After deducting sheriff’s commission, there remained $784 01, to be applied as a credit upon the execution.
On the 17th day of February, 1842, another execution issued on said judgment, indorsed with a credit of said sum of $784 01. This execution was levied upon some corn, hogs, and other personal property — sold by ¡the sheriff, and purchased by George E. Blackburn at the price of $61 85, and, after deducting sheriff’s commission, there remained of this sale,-58 76, ás a credit on the execution. The sheriff then returned the execution, indorsed, in substance, — no property -found to satisfy the remainder.
In a short time after the purchase of the slaves, Edward M. Blackburn took possession of one of them, ,and the other remained in the possession of Collins until two or three years before the commencement of this suit.
Collins, in March, 1849, filed his bill against Edward M. Blackburn, alleging that the negroes were worth *17 $1200 at the time of the sale; that George E. Blackburn was the general agent of his father ; that he had been authorized by his father to manage the execution, and to buy said slaves for him, and to do every thing he'' might think proper, in reference to said claim; that George purchased the slaves, not for himself, but for his father, and as his agent; that he was hard pressed at the time, and it was agreed between George and himself, at and before the sale, that the negroes should stand as a security for the debt, and 'that complainant might redeem them, by paying whatever might be due-on the judgment at the time of redemption, including said sum of $784 01, the nett sum for which the slaves' had been sold; and that, in that event, he was to be allowed for the services of the slaves; that since the' sale, Edward M. Blackburn frequently ratified' said contract and promise of George, and recognized the complainant’s right to redeem the negroes.
The bill also alleges, that the complainant had paid' an order drawn upon him by defendant for $30, which-ought to have been credited on the note upon which' the judgment was recovered, and that he had paid a-largeamount — “something like $500” — besides what was made by the sale of the negroes. An adjustment of accounts is asked; hire for the slaves is claimed ; an offer made to pay the balance of the judgment, if any" should remain, after the proper credits should ,be entered ; a redemption of the slaves is prayed for, and $400 are alleged to be brought into Court, which complainant states, is as much as he owes, “including the amount for which said boys sold.”
An amended bill is filed, stating, in substance, that E. M. Blackburn holds several notes on complainant for the hire of the negro which had remained in his possession for some years after the sale made by the-sheriff; that these notes were'exécuted at the desire, arid merely to please defendánt, and withcmf-any con-siderafiorri — defendant saying at the time they were given, that complainant was never to pay them; that *18 he would never call upon him to pay them; .that he never had done so, and that .complainant had never paid one cent on them; that, when one of the notes was. executed, defendant immediately turned it over, and entered a credit on the back of it for the full amount, or, marked it paid or discharged, when nothing in fact had been paid; that defendant had told complainant, he would mark other notes paid, and afterwards said he had done it — these notes are prayed to be delivered up to be cancelled.
The defendant, in his answers, denies that the ne-groes were worth at the time of the sale $1200, and says they were sold for their value, he denies that Geo-E. Blackburn was his general agent, does not believe that he-made any agreement with complainant to allow him to redeem, and states that, if he did make such agreement, it'was without authority.
He then states in his- answer to the amended bilb “that neither he, nor any authorized agent of his ever made any promise to complainant, that he might redeem, except upon condition of his paying the full amount of his debt without regard to the annual value of the slaves.” And he says he “always told complainant he might have the negroes by paying him what he gave for them, and also paying him' the balance of his execution, and that this is the only redemption he ever promised to him.” The answer further states that one of the negroes, by the earnest solicitation of the complainant, was left with, him on hire for several years, and that complainant executed his notes for the annual hire; that no certain calculation was made, that complainant would pay the notes for hire; that, from time to time, complainant promised to pay the debt, and the , notes were used “torget the balance of the debt.”' Blackburn says he put no value upon the notes; that it is probable he may have given up to complainant the first and second notes; professes to file one of them, 'and says he does not know wha ihas become of the other.
Decree o.f the-Circuit Court.
A promise by ii plaintiff in an execution that defendant may redeem property sold under execution upon pay--mentof the price when such promise has no other consideration to support it than the kind feeling of lite party, if not known to the bidders, and has no influence upon the sale of the property, is pot such promise as the chancellor can enforce.
*19 Two depositions only, are taken in the cause; the deposition of Young states a conversation between himself and the defendant, at defendant’s house, which took place a short time before this suit was brought, in which the defendant said, in reply to a statement of the witness that Collins was to meet him there that day to see something about the negroes, that, if that was the business of the witness, he need not look for him, for, that Collins had been promising from time to time, for two or three years, to come for. the purpose of redeeming the two negroes. He proved also that the negroes were worth from one to one hundred and twenty dollars per annum, each. The other deposition is that of Morris,.the sheriff, who made the sale. He states that, at the time of the sale and purchase of the negroes, George E. Blackburn told him that he purchased them' as the agent of his father, and with the understanding that Collins was to redeem them ; that Collins, being in embarrassed circumstances, the object was to secure his father’s debt. Both witnesses prove that the slaves, at the time of the sale, were worth $1200, and Morris states that each negro was worth per annum $100.
The Court below charged the defendant with the hire of the negroes, and with $30 which had been paid upon his order to Red din, and brought the defendant in debt to the complainant the sum of $52; decreed against him this sum, and directed him to surrender the slaves, Ned and Stephen, to complainant.
We admit that, as a general rule, where an agreement is made between two persons, before a sale is made by an officer, that the one whose property is to be sold, and to be bought by the other, shall have the privilege of redeeming it, that he will be permitted by the Chancellor to do so. But in the cases where this has been permitted to be done, there was either some valid consideration for the promise of the purchaser to allow a redemption, or, some injury resulting to the party whose property was sold, in consequence of the m'evious agreement. Conceding in this case, that *20 George E. Blackburn had authority from his father to make just such a promise and agreement as are alleged, we are led to enquire, what could have induced them ? The father, Edward M. Blackburn, had his execution for $1009, besides interest and costs, levied upon the slaves; the sheriff was about to proceed with the sale; Blackburn’s claim was safe, or thought to be safe to the extent of the value of the negroes ; the complainant was in embarrassed circumstances ; he promised to pay no interest beyond what was already accruing upon the execution, and was unable to comply, if he had made such promises; what then, constituted the consideration of the agreement to purchase the slaves, and allow their redemption ? We can imagine none which would be obligatory, and can perceive no motive for such an agreement on the part of George or his father, but their feelings of kindness for the complainant.
If an agreement on the part of plaintiff in an execution to give a defendant in execution the privilege of redeeming be relied upon and a redemption insis ted upon by the defendant in the execution, it must be admitted or proved based upon good consideration.
No allegation is made that the sale was not a fair one; it does not appear that any other person was induced not to attend the sale and bid for the slaves, or,' that any person present was prevented from bidding, or, that any injury whatever accrued to the complainant, in consequence of the agreement. We are at a loss, therefore, to perceive upon what valid ground a right to redeem the slaves can be based.
But, did George E. Blackburn have any authority from his father to make an agreement with Collins for the redemption of the negroes ? There is no proof that he had, and the answers of the defendant to the bills, though not as full and explicit as they might and ought to have been, substantially, as we think, deny such authority. Still, Edward M. Blackburn, after sanctioning the purchase, would be bound by any agreement, binding in law, made by his son at, and before the sale. But we think it questionable, whether any agreement at all, valid or invalid, has been established. No interview is shown to have taken place, either between George E. Blackburn and Collins, or between E. M. Blackburn and Collins. Indeed, it is not alleged, nor *21 pretended, that any agreement for the redemption of the slaves was made by E. M. Blackburn and Collins. And the only means furnished, for arriving at the conclusion that any such agreement was made between George and Collins, is what is proven by Morris, the Sheriff, to have occurred between him and George at, before, "and after the sale. Morris states that George told him “he purchased the negroes as the agent of his father,” and that “he purchased them with the under-standingthat Collins was to redeem them ; that the object of the sale, Collins being in embarrassed circumstances, was to secure his father’s debt.” This witness further proves that, several days before the sale, “he called on George to know who would act for his hither, who was in the South; and that George replied, he would, that there was an understanding that Collins was to have the privilege of redeeming the negroes? and he would purchase them;” but “George also stated in the same conversation on the subject, that if the ne-groes sold for the amount of the debt, he did not intend to buy them.”
Is it not manifest from this proof, that there was no absolute undertaking on the part of George to purchase the negroes? The debtor, therefore, could not have been deceived, and lulled into security, and prevented by the undertaking of George from looking out for other bidders. But, between whom, was this understanding that Collins was to redeem' the negroes? and what were the terms, and when was it to be done? Was it, between George and Collins, and was the redemption to depend upon the payment of the whole debt, or only what had been bid for the negroes, or between Collins and E. M. Blackburn? The Sheriff says, that “he called on George to know who would act for his father, who was in the South, and George replied he would; that there was an ‘understanding’ that Collins was to have, the privilege of redeeming the negroes. From this language, it might be inferred that the understanding was between Collins and E. M. Blackburn, and not *22 with Coilins and George; but it is not pretended by Collins in his bills, that he hsffi ever made any arrangement or agreement upon the subject of the redemption of the slaves, with E. M. Blackburn. The conversatioir between the Sheriff and George had occurred some nine years before the.deposition of the Sheriff was taken, and it would be very hard to recollect all that might have taken place at the time, or the precise language which was used-, and a very slight variance from the words used, might produce an important difference in the meaning to be attached to them. From the whole record, we have come to the conclusion, that there was no other understanding or agreement, than a mere naked promise oh the part of George E. Blackburn that, if he should purchase the negroes, Collins might have them again by paying the debt, interest, and costs. The purchase was not made, and the bill does not allege that it was made, for Collins, but for E. M. Blackburn. After the purchase, the negroes were his — held, not in trust for Collins, or under a quasi mortgage — but held as his own absolute property, subject only to a mere gratuitous promise by George, and E. M. Blackburn also, -that Collins should have the ne-groes by discharging the debt.
We are of opinion that no importance ought to be attached to the fact, that one of the negroes was permitted by Blackburn to remain in the possession of Collins for several years after the purchase, and that he took notes for his hire with no calculation of their being paid. Blackburn seems to have had no desire to keep the negroes, if he could get the amount of his claim. Collins was hard run — his negroes.had been sold, and we can perceive that kindness alone might have been a sufficient inducement to allow one of the negroes to remain. He acknowledges he told complain ant he might have the negroes again, by paying his debt. If it was really a redemption which was spoken of between the parties, then nothing would have to be paid to Blackburn, but the amount bid for the negroes *23 and interest; but this transaction shows to us that there was a mere promise to let Collins have his negroes again by paying the whole debt — this is not a redemption, but a repurchase — in common parlance, called a redemption, but in fact, a repurchase of the slaves. Some importance is attached by counsel to the fact that Blackburn got the bill of sale from the Sheriff to bring Collins to a settlement. We have no doubt that Black-bum, having made a promise to Collins to let him have the negroes again, was anxious that the matter should be closed. If Collins intended to get the negros again, it was natural that Blackburn should wish it done without further delajn
And if no time be fixed in which such privilege is to be exercised, which exists if at all only in pa-rol, should it not be demanded within five yeax§ —Quere?
Collins, in his original bill, goes into Court under the impression that; he owes Blackburn the sum of $400, and professes to bring that sum into Court, alleging that “it is as much as he owes.” And this, too, after charging that he had paid upon the debt, some $530, besides, what was made by the sale of the negroes — not a dollar of which is attempted, to be proved — and all is denied, except the sum of $30 paid to Reddin upon the order of Blackburn. And yet he obtains a decree against Blackburn for the sum of $52.
No time was fixed for the.alleged redemption to be made. Seven years elapse without any assertion of right, or attempt by Collins to redeem. Whatever understanding there was between the parties was in par-ol. depending upon frail memory alone. How long, even ander a valid and binding agreement, existing in parol only, shall a man be allowed to sleep upon his rights? Would not five years ' be reasonable, andas long as a man should be suffered to procrastinate his remedy in such a case?
We have given an attentive examination to the authorities referred to by the counsel of the appellee, and are of opinion that, although those cases are, in some respects, analagous to the case under consideration,, there is a material difference in principle between them.
*24 It results, from the foregoing views, that the Circuit Court erred in rendering a decree, directing Blackburn-to surrender the slaves, Ned and Stephen, to Collins, and to pay him the sum of $52. But Collins has shown himself entitled to a credit for the sum of $30, as paid 28th May, 1841. And it being our opinion that the-several notes given by Collins to Blackburn for the hire-of the negro, which was suffered to remain with him for a time, were never intended to be collected, and that the services of the negro were designed as a gratuity, and so understood by Collins, would it not be unjust in Blackburn to coerce payment of the notes?
Blackburn had a right to the hire of this slave, but he had a right to give his services to complainant; and, although he annually took the notes of Collins for the hire, we are of opinion from the bills and answers upon this subject, that it was the understanding between the parties at the time, that the services of the boy were a gratuity.
Blackburn says, “ it is very probable he may have given up the first and second notes, or may have agreed 'to cancel them ; that he put no value upon them, and has been able to find but one of them ; that one he professes to file; that he will not state with any certainty what has become of the other two; that they may have been given up to complainant, or been cancelled by himself by indorsement, tie has manifested no disposition to collect these notes, and we think it would be contrary to equity and good morals for him to attempt to do so.
The decree of the Circuit Court is reversed, and the cause remanded, that-a decree may be rendered, can-celling said notes for hire, and directing a credit to be entered upon the judgment of Blackburn for the sum of $30, as paid 28th of May, 1841, and perpetually injoin-ing him from the collection of so much of his judgment,, and dismissing the bill as to all other claims,
Collins, having shown himself entitled to relief,, will' have a right to his costs in the Court below.
Hewitt ami Lindseij for plainliff; Reed, Smith, Good-Í£e, and Harl&n for defendant;